BAILEY, Appellant, v. BUCHANAN, Respondent.

St. Louis Court of Appeals, April 16, 1907.

JUDICIAL SALES: Caveat Emptor: Vacating Judicial Sale at Instance of Purchaser. While the doctrine of *caveat emptor* applies to judicial sales, that doctrine does not inure to the benefit of a defendant in execution. Where property was sold under execution as the property of the execution defendant and bought by the execution plaintiff, the plaintiff could in equity have the sale set aside and the satisfaction of the judgment *pro tanto* vacated on the ground that the property sold was not the property of the defendant, although the execution plaintiff caused the land to be levied upon on the erroneous belief that the execution defendant had made a fraudulent conveyance of it. Where several tracts were sold separately, in such case, the execution plaintiff could set aside the sales of those tracts which the defendant did not own and let it stand as to those tracts the defendant did own, having the satisfaction of the judgment vacated *pro tanto*.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. H. Larimore* for appellant.

(1) Counsel for appellant recognizes that the doctrine of *caveat emptor* has always applied to judicial sales in this State, and in the very nature of things there could be no warranty of title in such sales; but appellant insists that under a long line of decisions the doctrine does not inure to the benefit of the defendant in the execution, and consequently does not apply in this case. Maguire v. Marks, 28 Mo. 193; Valle's Heirs v. Fleming Heirs, 29 Mo. 163; McLean v. Martin, 45 Mo. 393. (2) The levy of an execution on land, even when followed by a sale thereof, does not operate as a satisfaction of the judgment, if by reason of no title to the land in defendant there was no actual satisfaction. Beebe v. U. S. 161 U. S. 104; Cowles v. Bacon, 21 Conn. 196; Bryant v. Johnson, 24 Me. 304; Am. and Eng. Ency. of Law (2 Ed.), 712. (3) The cases seem to be almost a unit in holding that a court of equity will relieve the purchaser from the consequences of his purchase at an invalid sale, when the invalidity consists of want of title in the execution debtor, and this though the execution creditor be the purchaser. 2 Black on Judgments, 1489; Warner v. Helm, 1 Gilman (Ill.) 220; Henry v. Keys, 5 Sneed (Tenn.) 489; Muir v. Craig, 3 Blackf. (Ind.) 293; 19 Am. and Eng. Ency. of Pleading and Practice, 151; Scherr v. Himmelman, 53 Cal. 312; Kercheval v. Lamar, 68 Ind. 442; Hannon v. Hilliard, 83 Ind. 362; Holtzinger v. Edwards, 51 Iowa 383; Mambaugh v. Gates, 11 Page (N. Y.) 505; Hollister v. Dillon, 4 Ohio State 197; Ballard v. Scruggs et al., 18 S. W. 259; Smith v. Hinson, 4 Heisk. (Tenn.), cited in 18 S. W. Rep. 259.

*N. A. Mozley, Ralph Wammack* and *C. L. Keaton* for respondent.

(1) There is no equity stated in the petition. Appellant is not the victim of either accident, fraud or mis

take, according to the averments in his petition, and these are the subjects with which equity has to do. The petition merely alleges, and the agreed statement of facts shows, that appellant made a mistake of law in having the land complained of sold as the property of respondent. The doctrine of *caveat emptor* applies to all judicial sales in Missouri. If the purchaser thereat makes a good bargain, he is entitled to the benefits of it, while if he makes a bad one, he must suffer the loss. (2) "As a general rule, he who purchases at a judicial sale does so at his peril." Throkmorton v. Pence, 121 Mo. 57; Estes v. Alexander, 90 Mo. 453; Carter v. Phillips, 49 App. 321; Rowe v. Current River Co., 99 App. 163; Capen v. Garrison, 193 Mo. 343; Cunningham v. Edsall, 98 S. W. 545; Bunn v. Lindsay, 95 Mo. 250; Fox v. Mc-Goodwin, 56 S. W. (Ky.) 515; Hethcock v. Crawford County, 98 S. W. 584; Kleimann v. Gieselmann, 114 Mo. 437; Guinau v. Donnell, 98 S. W. 486.

STATEMENT.—Omitting caption and signatures, the petition is as follows:

"Plaintiff for his cause of action against defendant, says that on the fourteenth day of August, 1903, in the circuit court of St. Francois county, Missouri, he recovered judgment against defendant in the sum of $3076.-375, and on the twenty-fifth day of July, 1904, he caused an execution to be issued out of said court, which was delivered to Geo. A. Crain, the then duly elected and acting sheriff of Stoddard county, Missouri, for service, who in pursuance thereof, did, on the thirtieth day of September, 1904, at the court house door, in Bloomfield, Missouri, in said Stoddard county, and during the session of the circuit court of said Stoddard county, sell the following described lands at public vendue, after making a levy and duly advertising the same as the law directs, to-wit, the east 22 feet off lot 11, in block 23, in original town (now city) of Dexter, Stoddard county, Missouri; also twenty-three acres of the northwest quar-

ter of the southwest quarter, south of the railroad of the St. Louis, Iron Mountain and Southern Railway Company, in section 22, township 25, range 10 east, in Stoddard county, Missouri, to satisfy said execution. Plaintiff says that at the sale aforesaid he became the purchaser of the lands aforesaid at and for the sum of $1501, and received a sheriff's deed therefor, and that the said George A. Crain, sheriff aforesaid, in his return of the execution aforesaid, credited the same with the said sum of $1501, and the judgment aforesaid has, by the return aforesaid, been *pro tanto* satisfied in that sum; but plaintiff states to this court that the land aforesaid, was sold as the property of James W. Buchanan, and was bought at the sale aforesaid under the belief and understanding that the said lands were the property of James W. Buchanan, or plaintiff would not have bought the same, and that the said lands were sold by mistake. Plaintiff says that the said lands, were at the time of the rendition of the said judgment, and at all times since then, and are now the property of Lizzie A. Buchanan and S. P. Jeffers, in fee simple absolute, and the said Lizzie A. Buchanan and S. P. Jeffers, have at all times been in possession of the said lands to the exclusion of this plaintiff and all other persons, by reason of all which plaintiff took nothing by his purchase of the lands afore mentioned and defendant lost nothing, in either lands, money, other property or rights, but defendant has, by reason of the mistake in the ownership of said lands, secured the partial satisfaction of the said judgment in the sum of $1501, for which he has paid nothing and plaintiff received nothing. Wherefore plaintiff prays that the entry of satisfaction as to the said judgment, whereby the same has been credited in the sum of $1501, be vacated, and that the return of the said sheriff on the said execution be amended by striking therefrom that part of the same which shows a pay-

ment of said $1501, by sale of lands aforesaid, and that plaintiff have execution in accordance with the facts above set out for costs."

The following is the answer:

"Now comes the defendant and for answer to plaintiff's petition admits the rendition of the judgment and the issuance of the execution, the levy and sale, and the execution of the deed by the sheriff to plaintiff's as alleged, and denies each and every other allegation in plaintiff's petition.

"Defendant for further answer states that plaintiff took his said sheriff's deed to said premises with full knowledge of the conditions of the title and in whom it was vested at the time of his said purchase. The plaintiff ordered that sheriff in writing to levy upon the real estate and that Lizzie A. Buchanan filed her petition and made application for an injunction to restrain the sheriff from selling said premises alleging that defendant had no title in and to said premises, and this court on or about the first Monday of September, 1904, at the instance of plaintiff denied said application and injunction, announcing to and in the presence of the plaintiff that the purchaser at said sale of these lands would purchase at their peril, and only the title of the defendant in and to the same, and that on the day of the sale it was again announced in the presence of all persons, that defendant had no title to said premises and that the purchaser would purchase at their peril, so that plaintiff did purchase with full knowledge, without mistake, and received his deed only for whatever title defendant might have in and to said premises. That on or about the thirteenth day of September, 1905, for and in consideration of the sum of $225, plaintiff sold, assigned and transferred and set over to Ralph Wammack all the balance due, all his right, title and interest in and to the balance due on said judgment.

"Wherefore defendant prays the court to dismiss plaintiff's bill herein and for his costs."

A reply was filed putting in issue the new matter in the answer.

The cause was submitted to the court on the following agreed statement of facts:

"It is agreed that on the fourteenth day of August 1903, in the circuit court of St. Francois county, Missouri, plaintiff recovered judgment against defendant in the sum of $3,076.375, and that on the twenty-fifth day of July, 1904, plaintiff caused an execution to issue out of said court, which was delivered to George A. Crain, the then duly acting and elected sheriff of Stoddard county, Missouri. It is further agreed that plaintiff, Columbus D. Bailey, directed the sheriff in writing to levy said execution on the following described real estate as the property of J. W. Buchanan, to-wit: The southeast quarter and the south half of the northeast quarter of section one (1); the north half of the northeast quarter of section twelve (12); all in township twenty-four (24), range eight (8); the north half of the northwest quarter of section seven (7), in township twenty-four (24), range nine (9); twenty-three acres of the northwest quarter of the southwest quarter, south of the St. L., I. M. R. R. Co., in section twenty-two (22); township twenty-five (25), range ten (10) east; and the east twenty-two (22) feet of lot eleven (11), in block twenty-three (23), in original town of Dexter. All in Stoddard county, Missouri. That under the directions and request of plaintiff aforesaid, the said sheriff levied said execution on said real estate, and duly advertised all right, title and interest of the said J. W. Buchanan, in and to said real estate for sale, on the thirtieth day of September, 1904, at the court house door, at public auction in Bloomfield, Missouri, for cash in hand to satisfy said execution and cost. It is further agreed that prior to said sale, Lizzie A. Buchanan, claiming to be the own-

er of said land, except east 22 feet of lot 11, the proper-
ty of S. P. Jeffers, presented her petition and bond to
the judge of this court, praying an injunction against
said sheriff, to restrain and enjoin him from selling said
lands for the purpose of satisfying a debt and judgment
against J. W. Buchanan, on the ground that said prop-
erty, and all of it, except the east 22 feet off lot 11, was
her sole and separate property, and could not be taken
for the debt of another, and that the granting of said
injunction would prevent a multiplicity of suits; that
plaintiff, by his counsel, appeared and resisted the issu-
ance of a temporary writ in said cause, and upon plain-
tiff's objection, the judge of this court refused to grant
said temporary injunction, or to further hear said cause
and by its action permitted said land to go to sale, under
said execution.

"It is further agreed that on the said thirtieth day
of September, 1904, in pursuance of said advertisement,
the sheriff of Stoddard county, during the session of the
circuit court of said county, at the court house door, in
Bloomfield, Missouri, made proclamation of the sale of
said land to satisfy said execution and costs, and that
at that time and place, and after reading the advertise-
ment of sale and proclamation by the sheriff, C. L. Keat-
on, an attorney at law, representing Lizzie A. Buchanan,
publicly announced to all present, that the property
about to be sold, and hereinbefore described, was the
sole and separate property of Lizzie A. Buchanan, ex-
cept the east 22 feet off lot 11, which was the property
of S. P. Jeffers, and that whoever purchased at said sale
would purchase at his peril, and would get no title, and
that plaintiff and other bidders present heard such an-
nouncement, by the attorney of Lizzie A. Buchanan and
S. P. Jeffers; that the sheriff under the direction of
plaintiff's counsel proceded with the sale, at the same
time and place, and first offered for sale the southeast
quarter of section 1, and Ralph Wammack, being the

highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $70.

"The sheriff then offered for sale the southwest quarter of the southeast quarter of section 1, and Ralph Wammack, being the highest and best bidder for the said land, the same was stricken off and sold to him for the price and sum of $75.

"The sheriff then offered for sale the northeast quarter of the southeast quarter of section 1, and Ralph Wammack being the highest and best bidder for the said land, the same was stricken off and sold to him for the price and sum of $170.

"The sheriff then offered the northwest quarter of the southeast quarter of section 1, and Ralph Wammack being the highest and best bidder for the said land the same was stricken off and sold to him for the price and sum of $175.

"The sheriff next offered the southwest quarter of the northeast quarter of section 1, and Ralph Wammack being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $180.

"The sheriff next offered the southeast quarter of the northeast quarter of section 1, and Ralph Wammack being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $180.

"The sheriff then offered the northwest quarter of the northeast quarter of section 12, and C. D. Bailey, being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $180.

"The sheriff next offered the northeast quarter of the northeast quarter of section 12, and Ralph Wammack being the highest and best bidder for said land,

the same was stricken off and sold to him for the price and sum of $200.

"The sheriff next offered the northwest quarter of the northwest quarter of section 7, and Ralph Wammack being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $205.

"The sheriff then offered the northeast quarter of the northwest quarter of section 7, and C. D. Bailey, being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $200.

"The sheriff then offered the twenty-three acres described in the petition, and C. D. Bailey, being the highest and best bidder for said land, the same was stricken off and sold to him for the price and sum of $996, and lastly the sheriff offered for sale the east 22 feet off of lot 11, in the original town of Dexter, and C. D. Bailey, being the highest and best bidder for the said land, the same was stricken off and sold to him for the price and sum of $505.

"It is further agreed that Ralph Wammack paid to the sheriff the sum of $1080, the aggregated amount of his several bids for the lands purchased by him, and that after satisfying the costs of suit and sale, the sheriff paid to Columbus D. Bailey, the plaintiff in the case, the balance of the money, so paid to him by said Ralph Wammack, on account of said sale and purchase, and that the sheriff executed and delivered to said Ralph Wammack a deed for the land so purchased by him. It is further agreed that at the request of plaintiff the sheriff executed and delivered to plaintiff a sheriff's deed to the lands so purchased by plaintiff and credited the execution with the aggregated amount of plaintiff's bids, to-wit, the sum of $2056.

"It is further agreed that Ralph Wammack was a responsible and solvent bidder, and that at the said sale,

he bid the sum of $995 on the 23-acre tract aforesaid, and $500, on the east twenty-two feet off lot 11, and if his bid, at these sums, had been the highest and best bid, that the said Ralph Wammack would have paid to the sheriff the sum of $1495 for said property, and the said sheriff would have paid said sum to the said C. D. Bailey, said execution creditor.

"It is also agreed that after receiving the sheriff's deed to said property, plaintiff brought suit in the Stoddard county circuit court, against J. W. Buchanan and S. P. Jeffers, to set aside the deeds theretofore made to S. P. Jeffers by James W. Buchanan and Lizzie Buchanan to lot 11, aforesaid, and that upon a trial in said circuit court, the issues were determined in favor of defendants and the title to the east twenty-two feet of lot 11, aforesaid was, on the twenty-fifth day of October, 1905, decreed to be in S. P. Jeffers.

"It is also agreed that said C. D. Bailey, after receiving the sheriff's deed to said property, brought his suit in the Stoddard county circuit court, to set aside the deed theretofore made to Lizzie A. Buchanan, through the medium of a trustee, and in ejectment for the 23 acres of land, so purchased by him aforesaid and that upon the trial had in the circuit court, the issues were determined in favor of defendants, and the title to said property was on the sixteenth day of March, 1906, decreed to be fully vested in Lizzie A. Buchanan.

"It is further agreed that the said C. D. Bailey, after receiving sheriff's deed, brought suit in the Stoddard circuit court for the recovery of the three forty-acre tracts purchased by him at said sale from the said Lizzie A. Buchanan and the said James W. Buchanan, and that the said suit has been tried and submitted to the court and by the court taken under advisement until the September term, 1906, of the Stoddard circuit court.

"It is also agreed that at all times herein mentioned, J. W. Buchanan and Lizzie Buchanan were husband and

wife, and that said J. W. Buchanan had at one time or another been the owner of all the lands herein described, except the three forty-acre tracts, purchased by C. D. Bailey, which were deeded direct to Lizzie A. Buchanan by the Chouteau Land & Lumber Company.

"Further it is agreed, that after the sale, aforesaid, and return of the execution aforesaid, that there was a balance yet and unpaid on said judgment and interest, and that the said C. D. Bailey caused another execution to issue out of said court on said judgment for the balance due thereon, and delivered the same to the sheriff of Stoddard county, who levied upon the lands as the property of J. W. Buchanan, and advertised the same for sale, and thereupon, the following contract of sale and purchase was made in settlement, to-wit:

"State of Missouri, County of Stoddard:

"This contract made and entered into by and between C. D. Bailey, of Dexter, Missouri, party of the first part, and Ralph Wammack, of the city of Bloomfield, Missouri, party of the second part, witnesseth: That the said party of the first part, in consideration of the sum of $225, in hand to him paid by party of the second part, the receipt of which is hereby acknowledged, does hereby sell, assign transfer, and set over to the said party of the second part, all his right, title, interest in and to the balance now due on a certain judgment, rendered in the circuit court of St. Francois county, Missouri, on the fourteenth day of August, 1903, wherein C. D. Bailey was plaintiff, and James W. Buchanan defendant, as evidenced by a certain execution issued in said cause, and made returnable to the November term of the St. Francois county circuit court and now in the hands of the sheriff.

"The party of the first part, out of the monies aforesaid, is to pay all the costs up to and including publication of the land now advertised for sale in the Dexter Messenger.

"Witness our hand this thirteenth day of September, 1905.

"C. D. BAILEY."

The court rendered judgment for defendant, from which, after taking proper steps to preserve his exceptions to the ruling, plaintiff appealed.

BLAND, P. J. (after stating the facts).—The learned counsel for plaintiff recognizes that the doctrine of *caveat emptor* has always applied to judicial sales in this State, but insists that the doctrine does not inure to the benefit of defendant in an execution, and contends that as defendant lost nothing by the sheriff's sale of the lands described in the petition to the plaintiff, and as the plaintiff gained nothing by such sales, equity will decree a cancelation of the $1501 credit on the judgment, and thus put the parties back in the same position they were before the sales were made.

In Magwire v. Marks, 28 Mo. 193, "A recovered a judgment against B. Execution was issued thereon and levied by order of A — he giving the plaintiff an indemnification bond— on certain personal property in possession of B but known by A to be claimed by C as trustee for the wife of B. The sheriff made sale of the preperty levied on, and the amount made was indorsed on the execution in *pro tanto* satisfaction thereof. C sued the sheriff and recovered judgment against him for the amount made by said levy and sale, with interest, which was paid by A. *Held* that A was entitled to have the sheriff's return vacated and set aside so far as it stated a partial satisfaction of the execution, to have the same amended in accordance with the facts, and to have an execution issue for the whole amount of the judgment."

In McLean v. Martin, 45 Mo. 393, "A owned certain described land in the northwest quarter of section thirty-five, township sixty, range thirty-six. Under execu-

tion against him, the sheriff, by mistake, sold and deeded to B a tract similarily described in the northeast quarter of section twenty-five of the same township and range, to which A had no title. The purchase money was paid, and went to extinguish the judgment against A. Supposing the land to be his, A surrendered it to B, who moved on it and made improvements. Afterwards, discovering the misdescription, A regained possession, claimed the land, and refused to refund the purchase money. *Held,* that the doctrine *caveat emptor* had no application to such case; that the consideration for the money paid on the excution had failed, B having no title to the land, and that an action for the recovery of the money so paid was properly maintainable."

In Valle's Heirs v. Fleming's Heirs, 29 Mo. 152, it was held: "Where land is purchased in good faith at an administrator's sale, which is void because the requirements of the statute are not pursued, and the purchase money is applied in extinguishment of a mortgage to which such land was subjected in the hands of the owner, the purchaser will be subrogated to the rights of the mortgagee to the extent of the purchase money applied in the extinguishment of the mortgage, and the owner will not be entitled to recover possession until he repays such purchase money."

Black says: "But if the invalidity of the sale is attributable to the fact that the debtor had no title or interest whatever in the property sold, the more approved doctrine appears to be that, where the creditor himself purchases the property, the judgment is finally and irrevocably satisfied and the law courts have no power to set it aside or grant him relief. But this doctrine, it must be admitted, is opposed by a very respectable body of authorities. And however it may be at law, the courts of equity will relieve a creditor from the consequences of his purchase at such invalid sale." [Black on Judgments, pp. 1488-9.] In volume 19, p. 151, Ency.

of Pleading and Practice, it is said: "Although, as has been seen, there is much conflict upon the question whether the plaintiff, as purchaser, may obtain relief at law, or not, upon the purchase of lands to which the defendant (in execution) had no title, the cases are unanimous in holding that relief may be had in equity."

In Massie v. McKee, 56 S. W. (Tex. Civ. App.) 119, it was held: "A judgment creditor is entitled to have the sheriff's return on an execution and entry of satisfaction of a judgment set aside, when the execution is levied on property which is not in fact the property of the judgment debtor, as such levy did not satisfy the debt." And in Hollon v. Hale, 21 Tex. Civ. App. 194, it was held: "Plaintiff in judgment who purchases the property of another than the defendant at an execution sale thereunder and credits the bid upon the writ, is entitled to have such satisfaction of the judgment set aside upon ascertaining that the defendant had no title although he had notice of the claim of the owner of the land at the time of the sale."

In Cowles v. Bacon, 21 Conn. 1. c. 462-3, the court said: "The practice has uniformly been in conformity with the principle, that where there is no real, but only an apparent, satisfaction of the execution issued on a judgment, by reason of a mistaken or fruitless levy on lands, debt on judgment, as well as *scire facias*, may be brought to obtain satisfaction. The course of the authorities on this subject is given in the case of Fish v. Sawyer, 11 Conn. R. 545, in which we understand the court to approve and establish that practice, and to decide, that in all cases, debt on judgment lies where an execution is fruitless, by reason of a mistaken or void levy on land.

And we see no just reason for the limitation of this principle for which the defendant contends, by which it should be held to apply to cases, where as in the present, the plaintiff's testator, when he caused his execution

to be levied, had notice from the records, or otherwise, that the defendant had executed a conveyance of the land levied on, but erroneously supposed that such conveyance was fraudulently made, and was therefore, as to him, void. Such a mistake constitutes no just reason why the defendant should not pay the unsatisfied balance of the debt. The former neither got, nor did the defendant lose, anything, by this mistaken levy. Is the latter to go quit of his obligation, when it has not been discharged, by any mode known to the law, and therefore remains in full force, merely because the former had acted on a mistaken belief that the land levied on belonged to the defendant, and not to the person to whom he had ostensibly conveyed it? Or, is the former to be thus punished, by a forfeiture of his debt, for the benefit of his debtor, for erroneously supposing, that such conveyance was actually or constructively fraudulent, and as to himself void, and for trying to avoid it? It must, indeed, be some very stubborn rule of law which would be held to produce such an unrighteous result."

In Scherr v. Himmelmann, 53 Calif. 312, it was held: "Where a party causes an execution to be issued on a judgment, and it is levied on property which turns out not to have belonged to the judgment debtor, such party is entitled to bring an action in equity for the purpose of reviving the original judgment, and setting aside the credit upon the execution." Other cases in point are Kercheval v. Lamar, 68 Ind. 442; Hannon v. Hilliard, 83 Ind. 362; McLaughlin's Admrs. v. Daniel, 8 Dana (Ky.) 182; Bentley v. Long, 47 Am. Dec. 523; Bone v. Tyrrell, 113 Mo. l. c. 185.

Plaintiff gained nothing by his purchase of the two parcels of real estate and the defendant lost nothing by their sale on the execution. There are none of the elements of estoppel in the transaction, and no good reason can be given for holding that judgment was *pro tanto* satisfied by these sales, and we think the case comes

clearly within the equitable doctrine enunciated by the foregoing authorities, and that the plaintiff is entitled to the relief sought, unless, as is insisted by defendant, the plaintiff's position is such that he cannot hold on to and litigate the title to the one hundred and twenty acres of other lands purchased by him at the execution sales, and at the same time have the remedy he prays for in his petition; that he cannot grab the benefits of the sale with one hand and thrust aside the burdens with the other. It is a well settled principle of equity jurisprudence, that a party cannot hold on to the benefits of his bargain and at the same time be relieved of its hardships. He must put the other party *in statu quo* by giving up all he obtained by the bargain before a court of equity will afford him any relief against its inequities. [City of St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825; Fehlig v. Busch, 165 Mo. 144, 65 S. W. 542.] The real estate bid in by the plaintiff at the execution sales was not sold in lump. Each piece or parcel was sold separately, and the sale of each piece was therefore a separate and distinct sale, as much so as if the several parcels had been sold on separate executions. For this reason the plaintiff is not required to surrender his title, if any, acquired by his purchase of the one hundred and twenty acres, to entitle him to prosecute this suit. On the agreed statement of facts, we think plaintiff is entitled to the relief prayed for in his petition. The judgment is therefore reversed and the cause remanded, with directions to the circuit court to grant him such relief. All concur.