WRIGHT-DALTON-BELL-ANCHOR STORE COMPANY, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, February 7, 1910.

1. BANKRUPTCY: Schedule of Debts: Name of Creditor. In a bankrupt's schedule of debts and names of creditors appeared the name, "Dalton & Co." In the absence of any evidence tending to show the contrary, it cannot be held that the debt so listed was the debt of "Wright-Dalton-Bell-Anchor Store Company."

2. ———: Notice to or Knowledge of Creditor. Where the debt of a creditor of a bankrupt was not scheduled, and there was no evidence that the creditor had any notice or actual knowledge of the bankruptcy proceedings, the creditor was not affected by the bankruptcy proceedings nor was the bankrupt discharged from the payment of the debt.

3. ———: Effect of Bankruptcy on Bankrupt's Property. The filing of a petition in bankruptcy is notice to the world of

the pendency of the proceedings and operates as an attachment of the bankrupt's property and as an injunction restraining all people from intermeddling therewith.

4. ————: **Garnishment: Effect of Bankruptcy on Actions Pending in Other Courts.** A writ of garnishment was served on July 10th and judgment was rendered against the garnishee on July 21st. The judgment debtor was adjudged a bankrupt on July 16th. *Held,* that according to the bankruptcy laws the judgment rendered by the justice, and all subsequent proceedings, were *coram non judice.*

5. ————: **Bankruptcy Court Has Exclusive Jurisdiction.** In general, the adjudication of bankruptcy vests the bankruptcy court with exclusive jurisdiction to administer the property of the bankrupt as against any State court which may have obtained possession of such property through proceedings instituted within four months prior to the adjudication, and it is immaterial that the proceedings in the State court were for the enforcement of valid liens not affected by the bankruptcy act.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED.

*James F. Green* for appellant.

Any lien against the wages of Sanders which plaintiff acquired by the garnishment proceedings was vacated and annulled by the proceedings in bankruptcy against Sanders. 30 U. S. Statutes at Large, 1897, 1899, 565; In re Goldberg, 121 Fed. 578; In re Kenney, 97 Fed. 557; In re Reichmann, 91 Fed. 624; In re Higgins, 97 Fed. 775; Bear v. Chase, 99 Fed. 920; Klipstein v. Allen, 136 Fed. 385.

*David W. Hill* for respondent.

Plaintiff's debt against the defendant was never scheduled in the bankruptcy proceedings and the undisputed evidence is that the plaintiff never had any notice of the bankruptcy proceedings. Therefore, plaintiff's debt was not discharged and the garnishment pro-

ceedings never dissolved, for the reason that the federal court never acquired jurisdiction over plaintiff's claim or the State court proceedings in relation thereto. Collier on Bankruptcy (4 Ed.), 189; Black v. Blaze, 117 Mass. 17; Platt v. Parker, 6 N. Y. Super. 377; Lamb v. Brown, Fed. Cas. 8011.

NIXON, P. J.—This action was commenced on the 11th day of May, 1908, by the respondent filing before a justice of the peace in Butler county a suit upon a promissory note executed by T. A. Sanders and C. C. Hubbs on which the sum of twenty-eight dollars was alleged to be due the plaintiff. On the 27th day of May, 1908, judgment was rendered against the defendant, and on the 11th day of July, 1908, execution was issued on the judgment in favor of the plaintiff, and the St. Louis, Iron Mountain & Southern Railway Company was summoned as garnishee. The garnishee in due time filed an answer before the justice of the peace admitting that it owed the defendant, T. A. Sanders, sixty-eight and 20-100 dollars as wages due him for the month of June, and alleged that as Sanders was the head of a family and as the money due him was for labor done during the thirty days next preceding, only ten per cent. of the same was subject to garnishment; and it was further alleged that Sanders had been adjudged a bankrupt. On the 21st day of July, 1908, judgment was rendered against the garnishee from which it appealed to the circuit court of Butler county, where the plaintiff again obtained judgment. The case is here on appeal.

Several questions are raised by the record; among others, as to the regularity of the service on the garnishee, and the amount, if any, subject to garnishment by reason of the debtor being the head of a family. From the view that we have taken of the case, it is unnecessary to consider these questions.

I.   The controlling questions arising on this record are due to bankruptcy proceedings. It appears that the

debtor, T. A. Sanders, was adjudged a bankrupt at Little Rock in the Eastern District of Arkansas under the Acts of Congress relating to bankruptcy on the 16th day of July, 1908, and that he was discharged from bankruptcy on the 6th of April, 1909.

At the trial, there was offered in evidence the schedule that the bankrupt Sanders made at the time he was adjudged a bankrupt. Among the inventory of his debts, as stated in such schedule, attention is called to the following item: "Dalton & Bell Co., Poplar Bluff, Mo., $30.00," as among the creditors whose claims were unsecured. By this item the garnishee claims that the bankrupt intended to list the plaintiff's judgment against him. It will be perceived that "Dalton & Bell Co.," is not the name of the plaintiff, Wright-Dalton-Bell-Anchor Store Company. No evidence was introduced at the trial in any way tending to modify the statement of the schedule or to show in any way that this item listed as "Dalton & Bell Co.," was identical with the indebtedness of Sanders to the plaintiff or with the judgment of the plaintiff against him. The trial court properly held that the description did not identify it as the plaintiff's judgment, or as the note against Sanders. In the case of Liesum v. Krauss, 35 Misc. (N. Y.) 376, the creditor's name was "Liesum" and he was scheduled as "Liesman" and this debt was held not discharged because the court had no jurisdiction.

Section 17 of the Bankruptcy Law exempts from a release under a discharge in bankruptcy, among other things, "such debts as have not been scheduled in time for proof and allowance with the name of the creditor, if known to the bankrupt, unless the creditor had notice or actual knowledge of the proceedings in bankruptcy." The *debt* of the plaintiff was not scheduled at all, and there is no evidence that the plaintiff as a creditor had any notice or actual knowledge of the bankruptcy proceedings. Plaintiff was consequently not in any way affected by the bankruptcy proceedings, nor was Sand-

ers released by the discharge from bankruptcy from the payment of this debt or judgment.

II.   The St. Louis, Iron Mountain & Southern Railway Company was served with a writ of garnishment on the 10th day of July, 1908, and judgment was rendered against it, by the justice of the peace on the 21st day of July, 1908.   The judgment debtor, T. A. Sanders, was adjudged a bankrupt, as we have stated, on the 16th of July, 1908; so that at the time of the service of the writ of garnishment, no proceedings in bankruptcy were pending, but prior to the rendition of the judgment by the justice of the peace against the garnishee, the debtor had been adjudged a bankrupt.

The filing of a petition in bankruptcy is notice to the world of the pendency of the proceedings and operates as an attachment of the bankrupt's property and as an injunction restraining all persons from intermeddling therewith.   [In re Mertens, 131 Fed. 507; In re Breslauer, 121 Fed. 910; In re Krinsky, 112 Fed. 972; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, 7 Am. Bankr. R. 234.]

In general, the adjudication of bankruptcy vests the bankruptcy court with exclusive jurisdiction to administer the property of the bankrupt as against any State court which may have obtained possession of such property through proceedings instituted within four months prior to the adjudication, and it is immaterial that the proceedings in the State court were for the enforcement of valid liens not affected by the bankruptcy act.   From the authorities cited, it is apparent that the adjudication of Sanders as a bankrupt effectually assigned and transferred by operation of the bankruptcy law all his assets and choses in action—including the indebtedness of the garnishee—to the assignee in bankruptcy to be held as trustee for all the creditors and to be administered by the United States Court.   Hence, at the time of the service of the writ of garnishment—it being within four months prior to the adjudication of

Sanders as a bankrupt—and at the time the judgment was rendered against the garnishee by the justice of the peace, the garnishee did not owe the plaintiff's debtor, T. A. Sanders, for wages or otherwise, but did owe the assignee in bankruptcy; and consequently, no legal judgment could be rendered against the garnishee in a State court for an indebtedness to the bankrupt. The judgment against the garnishee rendered by the justice of the peace and all subsequent proceedings, according to the bankruptcy laws, were *coram non judice*. The judgment must therefore be reversed. All concur.